617 S.E.2d 816

**Jennifer HOLLOMAN, Plaintiff,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant.**

No. 32286.

Supreme Court of Appeals of West Virginia.

Submitted: May 11, 2005.

Filed: June 21, 2005.

William D. Turner, Pyles, Haviland, Turner & Smith, LLP, Lewisburg, for Plaintiff.

C. William Davis, Richardson & Davis PLLC, Bluefield, for Defendant.

E. Kay Fuller, Kimberly A. Fitzwater, Martin & Seibert, L.C., for Amici Curiae Progressive Classic Insurance Company, State Farm Mutual Automobile Insurance Company, State Auto Mutual Insurance Company, Westfield Insurance Company and Hartford Insurance Company of the Midwest.

Justice BENJAMIN delivered the opinion of the Court.

Justice STARCHER concurs and reserves the right to file a concurring opinion.

BENJAMIN, Justice.

This matter comes before this Court pursuant to certified questions presented by the Circuit Court of Greenbrier County pursuant to W. Va.Code § 58–5–2 (1998).[1] The circuit court certified the questions upon the request of plaintiff after it had denied her motion for partial summary judgment. Plaintiff's motion sought to collaterally estop defendant Nationwide Mutual Insurance Company ["Nationwide"] from contesting that it has committed violations of the Unfair Trade Practices Act, W. Va.Code § 33–11–1, et seq., ["UTPA"] with such frequency as to indicate a general business practices, by virtue of this Court's opinion in *Dodrill v. Nationwide Mutual Insurance Company*, 201 W.Va. 1, 491 S.E.2d 1 (1996). The two questions certified by the circuit court, together with the circuit court's answers are:

1. Is application of the doctrine of collateral estoppel appropriate in the present action based upon the adjudication in *Dodrill v. Nationwide Mutual Insurance Company*, 201 W.Va. 1, 491 S.E.2d 1 (1996), upholding the finding that Nationwide Mutual Insurance Company violated W. Va.Code § 33–11–4(9)?.

Circuit Court Answer: No.

1. W.Va.Code § 58–5–2 provides:
Any question of law, including, but not limited to, questions arising upon the sufficiency of a summons or return of service, upon a challenge of the sufficiency of a pleading or the venue of the circuit court, upon the sufficiency of a motion for summary judgment where such motion is denied, or a motion for judgment on the pleadings, upon the jurisdiction of the circuit court of a person or subject matter, or upon failure to join an indispensable party, may, in the discretion of the circuit court in which it arises, be certified by it to the supreme court of appeals for its decision, and further proceedings in the case stayed until such question shall have been decided and the decision thereof certified back. The procedure for processing questions certified pursuant to this section shall be governed by rules of appellate procedure promulgated by the supreme court of appeals.

2. Do public policy concerns, i.e., the desire to encourage remedial action(s) by defendants, bar application of the doctrine of collateral estoppel in this matter, based on *Dodrill v. Nationwide Mutual Insurance Company*, 201 W.Va. 1, 491 S.E.2d 1 (1996)?

Circuit Court Answer: Yes.

This Court has before it the Circuit Court of Greenbrier County's July 9, 2004 Order of Certification, the parties' briefs, a portion of the underlying circuit court record as designated by the parties, and the brief of *Amici Curiae* Progressive Classic Insurance Company, State Farm Mutual Automobile Insurance Company, State Auto Mutual Insurance Company, Westfield Insurance Company and Hartford Insurance Company of the Midwest.[2] Upon consideration of the above listed materials and for the reasons set forth below, the Court concludes that the Circuit Court of Greenbrier County correctly answered the first certified question. Finding the answer to the first question to be dispositive, this Court declines to address the second certified question.

## I.

## FACTS AND PROCEDURAL HISTORY

On May 4, 1999, Jennifer Holloman was involved in a two vehicle accident with a Nationwide insured in Greenbrier County, West Virginia. As a result of that accident, Ms. Holloman sustained various physical injuries and filed a claim with Nationwide. Ms. Holloman filed suit against the Nationwide insured in the Circuit Court of Greenbrier County on May 2, 2001. Shortly thereafter, that claim was settled for the insured's $25,000 policy limits.

Subsequently, on May 21, 2002, Ms. Holloman instituted a civil action in the Circuit Court of Greenbrier County against Nationwide alleging Nationwide violated the UTPA in the handling and settlement of her 1999 claim. Specifically, Ms. Holloman alleged that Nationwide violated W. Va.Code § 33-11-4(9)(f)[3] by not attempting to effectuate prompt, fair and equitable settlement of a claim in which liability was reasonably clear and that Nationwide has done so with such frequency as to indicate a general business practice.[4]

On March 24, 2004, Ms. Holloman filed a motion for partial summary judgment invoking the doctrine of collateral estoppel to establish that Nationwide had violated the UTPA with such frequency as to indicate a general business practice by virtue of this Court's decision in *Dodrill v. Nationwide Mutual Insurance Company*, 201 W.Va. 1, 491 S.E.2d 1 (1996) which, according to plaintiff, conclusively determined the issue. In response, Nationwide argued that doctrine of collateral estoppel was inapplicable to the instant matter arguing, among other reasons, that its claim handling procedures had

2. The Court granted *Amici Curiae's* motion to appear and file a brief as *Amici Curiae* by Order dated February 7, 2005.

3. The Complaint actually refers to W. Va.Code § 33–11–4(f). However, this appears to be a typographical error as such section does not exist and the language cited is that of W. Va.Code § 33–11–4(9)(f). W. Va.Code § 33–11–4(9)(f) (2002) provides:

The following are defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:

. . . . .

(9) *Unfair claim settlement practices* No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

. . . . .

(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear[.]

Statutory amendments made in 2002 did not affect the provisions at issue which remain identical to the statute in effect during the time frame at issue in this litigation.

4. This Court first recognized the right of a third-party claimant, such as plaintiff herein, to assert a claim for violation of the UTPA in *Jenkins v. J.C. Penney Casualty Insurance Company*, 167 W.Va. 597, 280 S.E.2d 252 (1981). In *Jenkins* we stressed that more than a single, isolated violation of W. Va.Code § 33–11–4(9) must be shown in order to indicate a "general business practice" as required by the statute. Syl. Pt. 3, *Jenkins v. J.C. Penney Casualty Ins. Co.*, 167 W.Va. 597, 280 S.E.2d 252 (1981). *Jenkins* was subsequently overruled to the extent it prohibited joinder of any UTPA claim and common law bad faith claim with the underlying personal injury action. Syl. Pt. 3, *State ex rel. State Farm Fire & Cas. Co. v. Madden*, 192 W.Va. 155, 451 S.E.2d 721 (1994).

changed in the more than nine years between the conduct at issue in *Dodrill* and that at issue in the instant matter. In support of this argument, Nationwide presented the affidavit of Danny D. Carpenter, Nationwide's director of casualty claims for the State of West Virginia [hereinafter "Carpenter affidavit"]. The Carpenter affidavit listed, albeit in somewhat general terms, several changes enacted in Nationwide's claims organization and business practices after this Court's decision in *Dodrill*.[5] Plaintiff offered no evidence in reply which would tend to contradict the matters contained in the Carpenter affidavit.

The circuit court held a hearing on Ms. Hollomon's motion on May 17, 2004, at which time it denied the motion for partial summary judgment. The circuit court's order concluded that a material issue of fact existed as to whether the *Dodrill* decision conclusively determined the identical issue presented, i.e., whether Nationwide violated the UPTA with such frequency as to indicate a general business practice. The circuit court supported this finding by noting the matters raised in the Carpenter affidavit and the remoteness in time between the acts forming the basis of the *Dodrill* decision and those at issue in the instant matter. After her motion for partial summary judgment was denied, plaintiff moved the circuit court to certify the issue to this Court. After a May 28, 2004 hearing on the motion for certified question, the circuit court entered its Order of Certification on July 9, 2004. The Order of Certification presented the two questions noted above, provided a statement of stipulated facts and incorporated by reference the circuit court's prior order denying Ms. Hollomon's motion for partial summary judgment. This Court accepted the certified questions for review by Order dated December 4, 2004.

## II.

## STANDARD OF REVIEW

In reviewing questions certified by a circuit court, we apply a *de novo* standard of review. *See*, Syl. Pt. 1, *Gallapoo v. Wal-*

*Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996)("[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo*.").

## III.

## DISCUSSION

In this third-party bad faith action, plaintiff asserts a claim against defendant Nationwide for alleged violations of West Virginia's UTPA. This Court recognized a third-party claimant's implied statutory right to assert cause of action for alleged violations of W. Va.Code § 33–11–4(9), which lists trade practices statutorily defined to be unfair, in *Jenkins v. J.C. Penney Casualty Insurance Company*, 167 W.Va. 597, 280 S.E.2d 252 (1981). Therein, we concluded that a plaintiff's right to maintain an action for violation of the UTPA is contingent upon proof not simply that a violation occurred, but that the defendant insurer committed such violations with such frequency as to indicate a general business practice. *Jenkins*, 167 W.Va. at 610, 280 S.E.2d at 260. Subsequently, in Syllabus Point 4 of *Dodrill v. Nationwide Mutual Insurance Company*, 201 W.Va. 1, 491 S.E.2d 1 (1996), we held:

> To maintain a private action based upon alleged violations of W. Va.Code § 33–11–4(9) in the settlement of a single insurance claim, the evidence should establish that the conduct in question constitutes more than a single violation of W. Va.Code § 33–11–4(9), that the violations arise from separate, discrete acts or omissions in the claim settlement, and that they arise from a habit, custom, usage, or business policy of the insurer, so that, viewing the conduct as a whole, the finder of fact is able to conclude that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a "general business practice" and can be distinguished by fair minds from an isolated event.

Syl. Pt. 4, *Dodrill*. Upon examination of the trial court record at issue in *Dodrill* and affording proper deference to the factfinder's

5. For example, the affidavit indicates that since 1996 Nationwide has had a dedicated full time director of casualty claims in West Virginia. Prior to 1996, the person overseeing claims in West

Virginia oversaw other states as well. Further, the affidavit maintains that claims handling procedures in West Virginia are now subject to constant internal review.

conclusions, this Court concluded that sufficient evidence existed on the record to support the jury's verdict that Nationwide, in the settlement of the *Dodrill* claim, had failed, on a number of separate occasions, to effectuate a prompt, fair and equitable settlement once liability had become reasonable clear and that such violations had occurred with such frequency during the negotiation of that claim to indicate a general business practice. *Dodrill*, 201 W.Va. at 12, 491 S.E.2d at 12. Invoking the doctrine of collateral estoppel, plaintiff argues that our decision in *Dodrill* conclusively establishes that Nationwide violates the UTPA which such frequency as to constitute a general business practice, thus satisfying her burden to demonstrate a general business practice.

 "Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit." Syl. Pt. 2, in part, *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983). Plaintiff's invocation of collateral estoppel in the instant matter is deemed to be offensive collateral estoppel because plaintiff was not a party in the *Dodrill* action. In *Conley*, we discussed the offensive use of the collateral estoppel doctrine and held:

> [w]hether a stranger to the first action can assert collateral estoppel in the second action depends on several general inquiries: Whether the issues presented in the present case are the same as presented in the earlier case; whether the controlling facts or legal principles have changed substantially since the earlier case; and, whether there are special circumstances that would warrant the conclusion that enforcement of the judgment would be unfair.

Syl. Pt. 6, *Conley*. Over a decade later, we set forth four requirements for application of collateral estoppel. In *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), we held:

> [c]ollateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Syl. Pt. 1, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995); *see also* Syl. Pt. 1, *Haba v. Big Arm Bar and Grill, Inc.*, 196 W.Va. 129, 468 S.E.2d 915 (1996)(same).[6] The holdings in *Conley* and *Miller*, which may appear inconsistent at first blush, are similar as *Miller* may be viewed as subsuming *Conley*. In *Miller*, this Court recognized that the issue presented is not identical if the second action involves different facts, legal standards or procedures. *Miller*, 194 W.Va. at 10, 459 S.E.2d at 121; *see also City of Huntington v. Bacon*, 196 W.Va. 457, 463, 473 S.E.2d 743, 749 (1996). Likewise, *Conley's* special circumstances inquiry may be seen as falling within condition four of *Miller*—a full and fair opportunity to litigate the issue. Having reconciled any possible inconsistencies which appeared between *Conley* and *Miller*, we turn now to the issue currently before this Court. •

 We have been asked to determine whether collateral estoppel may be applied in the present action to satisfy plaintiff's burden of demonstrating a general business practice on the part of Nationwide.[7] At the outset of

---

**6.** The use of collateral estoppel in *Miller* and *Haba* is properly characterized as defensive. In *Miller*, we rejected the defendant's argument that her battery conviction should be overturned because the State was collaterally estopped from prosecuting her for the offense. The defendant in *Miller* argued that an administrative law judge's determination, which had been affirmed on appeal to the circuit court, that her employer failed to prove she engaged in patient abuse on February 10, 1992, precluded a criminal prosecution arising from the same incident. *Miller*, 194 W.Va. 3, 8–9, 459 S.E.2d 114, 119–20

(1995). Conversely, in *Haba*, we found the appellants were collaterally estopped from contesting liability in their wrongful death action arising from an automobile accident where appellants' decedent was found primarily liable for the accident in a prior action brought against the decedent. *Haba*, 196 W.Va. at 133–34, 468 S.E.2d at 919–20.

**7.** Stated another way, the issue presented to this Court is whether a final adjudication that an insurance company has violated the UTPA with such frequency as to indicate a general business

this discussion, we note that the offensive use of collateral estoppel is generally disfavored in this jurisdiction. *Tri–State Asphalt Products, Inc. v. Dravo Corp.,* 186 W.Va. 227, 230–31, 412 S.E.2d 225, 228–29 (1991). Further, the right to offensively invoke collateral estoppel is not automatic and rests in the discretion of the trial court. *Conley,* 171 W.Va. at 592, 301 S.E.2d at 224; *Laney v. State Farm Mut. Ins. Co.,* 198 W.Va. 241, 246, 479 S.E.2d 902, 907 (1996). In the instant matter, the circuit court denied plaintiff's request for offensive use of collateral estoppel when it denied plaintiff's motion for partial summary judgment. The circuit court's finding that collateral estoppel was inapplicable in the instant matter was then certified to this Court. Our *de novo* review of the circuit court's answer to the certified question confirms the circuit court did not err.

■ Under *Miller* we must first examine whether the issue decided in *Dodrill* is identical to that presented in the action at bar. Plaintiff maintains that this requirement has been "clearly" met by virtue of *Dodrill's* finding that Nationwide had violated the UTPA with such frequency to indicate a general business practice, which, according to plaintiff, conclusively determines the issue. In support of this position, plaintiff argues that the passage of time is not a bar to the application of collateral estoppel and that the Carpenter affidavit is insufficient as a matter of law to show that the controlling facts have changed substantially since *Dodrill.* Nationwide counters by arguing that the actions which formed the basis of *Dodrill* finding began in 1987 and continued until 1990. By contrast, the actions forming the basis of plaintiff's claim allegedly began in 1999, three years after the *Dodrill* decision was

issued, and continued into 2001. Moreover, according to Nationwide, the uncontradicted Carpenter affidavit demonstrates that Nationwide took actions to correct the violations found in *Dodrill* prior to the acts at issue in this litigation.[8]

In *Dodrill,* this Court examined alleged violations of the UTPA which occurred in the handling of a single insurance claim and addressed what evidence was sufficient to establish a "general business practice" arising from the handling of a single insurance claim.[9] In so doing, this Court reviewed the evidence submitted to the jury including, but not limited to, evidence that Nationwide's initial investigation of the Mr. Dodrill's claim was limited to telephone contact with the claimant and information gathered internally, that information regarding the claim was not shared among Nationwide personnel and the history of negotiations between the parties, in the light most favorable to the prevailing party. *Dodrill,* 201 W.Va. at 11–12, 491 S.E.2d at 11–12. After discussing the evidence presented to the jury, we noted:

> from our review of the entire record, we do believe that the evidence would support a conclusion that, *during the negotiation process outlined above,* Nationwide violated W. Va.Code § 31–11–4(9) by failing in good faith, and on numerous, separate occasions, to effectuate a prompt, fair and equitable settlement of the Dodrill claim, on which liability had become reasonably clear. We also believe that the evidence would support the conclusion that such violations occurred with such frequency *during the negotiation process in the Dodrill claim* that a general business practice was indicated. In reaching this conclusion, we rely, as did the trial court below, on the

practice may be applied in any future UTPA action against the insurer to establish that the insurer has a general business practice of violating the UTPA.

8. Nationwide also argues that public policy encouraging remedial actions, as evidenced by Rule 407 of the *West Virginia Rules of Evidence,* bars application of the collateral estoppel doctrine in this matter. Rule 407 provides, in pertinent part, "[w]hen, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negli-

gence or culpable conduct in connection with the event." W. Va. R. Evid. 407. We do not address the public policy issues raised by Nationwide and the second certified question because, as noted above, our answer to the first certified question is dispositive of the issue presented.

9. Prior to *Dodrill,* this Court had recognized that a "general business practice" could be demonstrated in the handling of a single claim or in the handling of multiple claims, but had only provided guidance with respect to proof where multiple claims were involved. *Dodrill,* 201 W.Va. at 10, 491 S.E.2d at 10.

applicable decisional and statutory law which we have here reviewed, the instruction given by the trial court, and the evidence in the record, taken in the light most favorable to the prevailing party below, Mr. Dodrill, assuming that all conflicts in the evidence were resolved by the jury in his favor, and after giving him the benefit of all favorable inferences which may be drawn from the facts.

*Dodrill,* 201 W.Va. at 12, 491 S.E.2d at 12 (emphasis added). As the above discussion demonstrates, the focus in *Dodrill* was upon whether the insurer's conduct in the handling of a single claim, the Dodrill claim, was sufficient to indicate a general business practice of UTPA violations.

■■■■ Both the legal issues presented and controlling facts must be identical in each action to satisfy the first *Miller* requirement for application of collateral estoppel. While the legal issue (violation of the UTPA as a general business practice) may be identical in both *Dodrill* and the instant action, the controlling facts simply are not. The above discussion of *Dodrill* demonstrates that the finding was based upon the limited information provided to the jury regarding Nationwide's conduct in handling *the Dodrill claim.* Nationwide's conduct at issue in *Dodrill* occurred more than nine years prior to the conduct supporting plaintiff's claim. We find plaintiff's argument that the passage of time is not a bar to the application of collateral estoppel to be unpersuasive.[10] A company's general business practice is often a fluid process reacting to changes in the legal and economic environments. This is true whether the company is in the business of insurance or another type of business. To find that a single jury conclusion that an insurer's handling of a single claim indicated a general business practice of UTPA violations conclusively establishes, for all time, an element of a statutory cause of action is not plausible. In order to establish a statutory cause of action, a claimant must demonstrate that the insurer (1) violated the UTPA in the handling of the claimant's claim and (2) that the insurer committed violations of the UTPA with such frequency as to indicate a general business practice. *Jenkins,* 167 W.Va. at 610, 280 S.E.2d at 260; *Dodrill,* 201 W.Va. at 9–10, 491 S.E.2d at 9–10. Thus, establishment of a statutory cause of action necessarily requires that the general business practice be in existence *at the time* the claim at issue was handled. The controlling facts supporting a general business practice finding will not be identical if there is credible evidence that the insurer changed its business practices between the time the insurer handled the claim underlying a general business practice finding and the time the claim or claims at issue in the subsequent litigation were handled. Accordingly, we now hold that collateral estoppel will not apply in a statutory cause of action for violation of W. Va.Code § 33–11–4(9) to establish an insurer's "general business practice" where there is credible evidence on the record in the action at bar that the insurer altered its general business practice between the time the insurer handled the claim underlying a prior general business practice finding and the time the

---

10. The three cases relied upon by plaintiff in support of this argument are not actions seeking to impose civil liability for alleged statutory violations, but involve a constitutional challenge, an action in equity and a claim of racial segregation in a city school system. The first case, *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), involved the second constitutional challenge directed by the federal government to Montana's imposition of a gross-receipts tax upon contractors of public, but not private, construction projects. The government argued the tax violated the supremacy clause. *Duquesne Slag Products Co. v. Lench,* 490 Pa. 102, 415 A.2d 53 (1980), was an action in equity seeking to require the Commonwealth to solicit bids for stone, gravel or slag on a volume basis rather than a per ton basis and was brought 28 years after an identical effort was rejected. In both *Montana* and *Duquesne Slag,* the controlling facts had not changed between the two actions. Finally, *Riddick v. School Board of the City of Norfolk,* 784 F.2d 521 (4th Cir.1986), held that an eight year old finding that the city school district had achieved a unitary status and eliminated racial discrimination after twenty years of court supervision and litigation precluded a second racial discrimination/segregation suit challenging a pupil assignment plan. In *Riddick,* the trial court had determined the prior finding of a unitary school system was supported by evidence on the record and shifted the burden to plaintiffs to show the proposed plan was adopted with the intent to discriminate on the basis of race. *Riddick,* 784 F.2d at 528.

 

claim or claims at issue in the subsequent litigation were handled.

Applying this principle to the instant action, we find the first *Miller* requirement for application of collateral estoppel is not met as the issue is not identical. The acts supporting the *Dodrill* decision occurred approximately nine years before the acts at issue in the instant litigation. Moreover, evidence exists on the record that Nationwide altered its business practices subsequent to *Dodrill*.[11] Collateral estoppel is not applicable simply because *Dodrill* was a final adjudication and it is being invoked against Nationwide, the defendant in *Dodrill*. Although analysis of the first *Miller* requirement prohibits the use of collateral estoppel in this matter, we note that the fourth *Miller* requirement, a full and fair opportunity to litigate the issue, would likely not be met where the acts forming the basis of the issue previously decided are different than the acts forming the basis of the action in which collateral estoppel is invoked.

### IV.

### CONCLUSION

In conclusion, we find that the Circuit Court of Greenbrier County correctly answered the first certified question. The application of the doctrine of collateral estoppel is not appropriate in the present action based upon the adjudication in *Dodrill v. Nationwide Mutual Insurance Company*, 201 W.Va. 1, 491 S.E.2d 1 (1996), upholding a finding that Nationwide Mutual Insurance Company violated W. Va.Code § 33–11–4(9). We decline to address the second certified question as our answer to the first certified question is dispositive of the issue presented.

CERTIFIED QUESTIONS ANSWERED

STARCHER, J., concurring.

Under the doctrine of collateral estoppel— also called the doctrine of issue preclusion— "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litiga-

tion." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). It is well-settled that "a litigant who was not a party to a prior judgment may nevertheless use that judgment 'offensively' to prevent a defendant from relitigating issues resolved in the earlier proceeding." *Parklane*, 439 U.S. at 326, 99 S.Ct. 645.

I write separately to clarify that the doctrine of collateral estoppel can be used by a litigant in a claim under the Unfair Trade Practices Act, *W.Va.Code*, 33–11–1 to—10, and even to establish a "general business practice" under *W.Va.Code*, 33–11–4(9). However, the litigant must meet the four conditions set forth in Syllabus Point 1 of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

---

11. Plaintiff argues that the Carpenter affidavit should not be considered as it is "conclusory." After examining the Carpenter affidavit, we do not agree that it is conclusory. It sets forth changes enacted by Nationwide subsequent to *Dodrill* and is uncontradicted on the record.