709 S.E.2d 743

**Farouk ABADIR, Hosny Gabriel, Ricardo Ramos, Alfredo Rivas, Michael Vega and Huntington Anesthesiology Group, Inc., Plaintiffs Below, Appellants**

v.

**Mark H. DELLINGER and Bowles Rice McDavid Graff & Love LLP, Defendants Below, Appellees.**

**No. 35593.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 15, 2011.

Decided May 2, 2011.

William D. Levine, Esq., St. Clair & Levine, Huntington, WV, for Appellants.

David D. Johnson, III, Esq., Winter Johnson & Hill PLLC, Charleston, WV, for Appellees.

PER CURIAM:

This case comes before us on appeal for essentially a third time.[1] The current appeal is by the plaintiffs below, Farouk Abadir, Hosny Gabriel, Ricardo Ramos, Alfredo Rivas, Michael Vega and Huntington Anesthesia Group, Inc. ("Appellants") from a November 19, 2009, order of the Circuit Court of Cabell County granting a motion to dismiss filed by the defendants below, Mark Dellinger and the law firm of Bowles Rice McDavid Graff & Love LLP ("Appellees"). Following this Court's decision in *Messer II*, the Appellants commenced this action because, according to their Complaint, the case in which they had been defendants was settled by Mr. Dellinger, their attorney, without their consent. The circuit court dismissed the case concluding that since it had been determined by this Court that Mr. Dellinger had the apparent authority to settle, the doctrine of collateral estoppel precluded the Appellants from challenging what Mr. Dellinger had done. Herein, Appellants allege that the circuit court erred in granting Appellees' motion to dismiss because it failed to distinguish between the actual authority of an attorney, which pertains to the relationship between the attorney and the client, and the apparent authority of an attorney to act for the client, which relates to the dealings between the attorney and a third party. Having thoroughly considered the record, briefs, arguments of the parties, and the pertinent authorities, we find that the circuit court erred in granting Appellees' motion to dismiss. For the reasons stated more thoroughly below, we reverse the November 19, 2009, order of the Circuit Court of Cabell County and remand this matter with directions.

## I.

### FACTS AND PROCEDURAL HISTORY

A full recitation of the facts of the underlying actions were set forth in *Messer I* and *Messer II*. Accordingly, we will only recite

---

1. In the first appeal (hereinafter referred to as "*Messer I* "), this Court reversed the dismissal by the circuit court of Theresa Messer's discrimination suit based on a handicap. *See Messer v. Huntington Anesthesia Group, Inc.*, 218 W.Va. 4, 620 S.E.2d 144 (2005) (holding that the exclusivity provision of the Workers' Compensation Act does not preclude an employee's discrimination claim against an employer "[t]o the extent a worker's injuries are directly and proximately caused by the unlawful discriminatory acts of his or her employer, and are of a type not otherwise recoverable under the Workers' Compensation Act."). In the second appeal (hereinafter "*Messer II*"), this Court vacated an order of the circuit court which granted summary judgment to her previous employer, Huntington Anesthesia Group ("HAGI"), and the individual shareholder/physicians of HAGI, and found that the court-annexed mediation resulted in a valid and enforceable settlement agreement because Mr. Dellinger had apparent authority to settle the case. This Court also awarded attorney's fees to Ms. Messer for her efforts to enforce the settlement agreement. *See Messer v. Huntington Anesthesia Group*, 222 W.Va. 410, 664 S.E.2d 751 (2008).

those facts necessary to provide a context for the matters in the instant appeal.

In *Messer II*, plaintiff Messer maintained that the lower court erred by refusing to enforce the settlement agreement on the grounds that Mr. Dellinger lacked the authority to bind the defendant physicians. 222 W.Va. at 418, 664 S.E.2d at 759. Conversely, the defendant physicians maintained that there was no enforceable settlement agreement because there was no meeting of the minds, and Mr. Dellinger had never been authorized to settle because all of the defendant doctors had not approved the settlement agreement. *Id.*

■ In determining whether an enforceable settlement agreement existed, this Court determined that the pivotal issue to be decided was whether, in the absence of express authority, Mr. Dellinger had the apparent authority to obligate the doctors and HAGI to the terms of the settlement agreement. *Id.* We recognized that "[w]hen an attorney appears in court representing clients there is a strong presumption of his authority to represent such clients, and the burden is upon the party denying the authority to clearly show the want of authority." Syl. Pt. 5, *Dwight v. Hazlett*, 107 W.Va. 192, 147 S.E. 877 (1929). We concluded that the "facts simply [did] not establish the clear showing necessary to overcome the presumption of Mr. Dellinger's apparent authority to bind his clients to the settlement agreement." *Messer*, 222 W.Va. at 420, 664 S.E.2d at 761. Accordingly, we found that it was error for the lower court to deny Messer's motion to enforce the settlement agreement. *Id.*

Following this Court's opinion in *Messer II* decided June 26, 2008, Appellant doctors filed the instant action against their lawyer, Mr. Dellinger, on November 19, 2008, alleging the following:

16. None of the Plaintiffs hereto authorized Mr. Dellinger to settle on their behalf nor had any of them authorized Dr. Ramos to be their spokesman.

17. Notwithstanding the absence of any authority from the individuals whom he was representing in the Messer suit, Mr. Dellinger advised the attorney for Ms. Messer that all defendants had agreed to settle.

18. After he learned of this misrepresentation, Hosny Gabriel, advised Mr. Dellinger that there was no agreement among all defendants and that no settlement had been authorized.

19. After hearing the evidence, the Circuit Court of Cabell County determined that Mr. Dellinger had not been authorized by his clients to settle the case. Thereafter, the Circuit Court dismissed Ms. Messer's case. The Supreme Court reversed the Circuit Court decision on the settlement ruling that an attorney who had appeared in court representing all defendants, was presumed to have had the authority to settle a case.

20. In conformity with the decision of the Supreme Court, the Circuit Court entered a judgment against all of the defendants in the Messer matter for the settlement amount, for interest subsequent to the date of settlement, and for attorney fees and costs.

21. Had Mr. Dellinger not settled the case, none of the defendants, and more specifically the Plaintiffs hereto, would have incurred any liability. This was because the Circuit Court dismissed Ms. Messer's case.

22. As a consequence of the wrongful settlement by Mr. Dellinger, Farouk Abadir, Hosney Gabriel, Ricardo Ramos, Alfredo Rivas, Michael Vega and HAGI were damaged.

23. Mr. Dellinger's conduct in failing to communicate with the Plaintiffs hereto, for failing to explain the terms of the proposed settlement to each of them, for continuing to represent all after a conflict among some had arisen, in failing to confirm that each had agreed to settle, in failing to confirm that each understood and had agreed to assume the responsibility for the terms of the settlement as may have been agreed upon among them and for settling the case thereby causing the Plaintiffs to incur a liability for something that they had not agreed

to assume constitutes professional negligence, legal malpractice, misfeasance, a breach of his fiduciary obligation to his clients, and a breach of contract to provide proper representation.

24. But for the professional misconduct and the legal malpractice by Mr. Dellinger, for which, as his employer, the law firm of Bowles, Rice, McDavid, Graff & Love is liable since all activities of Mr. Dellinger were undertaken as an employee thereof, Plaintiffs hereto would have incurred no liability to Ms. Messer and would not have had a judgment entered against them.

25. Mr. Dellinger and Bowles, Rice, McDavid Graff & Love are liable to the Plaintiffs hereto for the amount of damages which they incurred which is the amount of money which each paid to Theresa Messer and/or her attorney.

.    .    .    .    .

On December 12, 2008, Mr. Dellinger and his law firm responded to the Complaint by filing a Motion to Dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, asserting that Appellants were collaterally estopped from pursuing the claims against Mr. Dellinger due to the holdings by this Court in *Messer II*. Specifically, Appellees asserted that in *Messer II*, this Court evaluated the facts in the record and concluded that when "[v]iewed as a whole, the statements and conduct of the doctors form clear supportive evidence that Mr. Dellinger's reliance on Dr. Ramos' representations was reasonable under the circumstances." Based upon this language, Appellees maintained that this Court essentially found that Mr. Dellinger had actual authority to settle the claims against his clients, and accordingly, HAGI and the doctors had a "full and fair opportunity to litigate" the issue of Mr. Dellinger's authority at the trial court and appellate level. Thus, Appellees asserted that the doctrine of collateral estoppel was satisfied. *Conley v. Spillers*, 171 W.Va. 584, 588, 301 S.E.2d 216, 220 (1983).

Appellants filed a memorandum in opposition to Appellees' motion to dismiss on December 26, 2008. On November 19, 2009, the circuit court granted Appellees' motion to dismiss, finding that pursuant to this Court's opinion in *Messer II*, the Appellants were collaterally estopped from pursuing an action against Mr. Dellinger.

## II.

### STANDARD OF REVIEW

"Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995). Motions to dismiss for failure to state a claim pursuant to West Virginia Rule of Civil Procedure 12(b)(6), as filed by the Appellees in this case, should only be granted when " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Murphy v. Smallridge*, 196 W.Va. 35, 36, 468 S.E.2d 167, 168 (1996) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

## III.

### DISCUSSION

Appellants maintain that the circuit court erred in granting Appellees' motion to dismiss and finding that the doctrine of collateral estoppel prevented the Appellants from asserting a claim against Mr. Dellinger. Specifically, Appellants allege that the circuit court failed to distinguish between the actual authority of an agent to do some act and the apparent authority of an agent to bind the principal by an unauthorized act. Appellants assert that the circuit court's confusion is apparent from the following excerpt from its order:

The gravamen of plaintiff's present legal malpractice Complaint is the averment that Mr. Dellinger lacked authority from HAGI and the doctors to bind them to a settlement with Ms. Messer. *See* the Complaint, page 4, ¶¶ 16, 17 and 22. The same issue was at the heart of their oppo-

sition to the motion to enforce the settlement in the underlying action and their subsequent appeal in *Messer*: "Appellees maintain that ... Mr. Dellinger never had been authorized to make the representation that all of the doctors had approved the settlement agreement." *Messer*, 664 S.E.2d at 759. The Supreme Court of Appeals clearly rejected that proposition in *Messer*, and this Court has concluded that plaintiffs are therefore estopped from relitigating the issue now in this malpractice action.

Appellants maintain that although this Court ruled in *Messer II* that Mr. Dellinger was able to obligate the Appellants to a settlement because of his apparent authority, this Court never ruled that Mr. Dellinger had the actual authority to do so. Appellants point out that, to the contrary, this Court recognized that because Mr. Dellinger had never been authorized by his clients to settle, the issue on appeal was whether he had the apparent authority to do so:

> "The sole pivotal issue before us is whether, in the absence of express authority, the Appellees' attorney had the apparent authority to obligate the doctors and HAGI to the terms of the settlement agreement."

222 W.Va. at 418, 664 S.E.2d at 759.

Accordingly, Appellants contend that because this Court held in *Messer II* that Mr. Dellinger had the apparent authority to settle the case, the fact that his action may not have been authorized was not relevant to our decision. Thus, Appellants assert that the issue of actual authority was not decided in *Messer II*, and they are therefore not collaterally estopped from litigating this issue in the instant case.

▮▮▮▮ In Syllabus Point 2 of *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216, this Court explained that the doctrine of collateral estoppel will prevent litigation of issues which previously have been litigated:

> Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit. We have

made this summary of the doctrine of collateral estoppel:

> But where the causes of action are not the same, the parties being identical or in privity, the bar extends to only those matters which were actually litigated in the former proceeding, as distinguished from those matters that might or could have been litigated therein, and arises by way of estoppel rather than by way of strict *res ajudicata*. *Lane v. Williams*, 150 W.Va. 96, 100, 144 S.E.2d 234, 236 (1965).

*Id.* at Syl. Pt. 2, 301 S.E.2d at 217. With respect to the claim by an entity that was not a party to the first litigation, the determination under *Conley* requires several factors:

> Whether a stranger to the first action can assert collateral estoppel in the second action depends on several general inquiries: Whether the issues presented in the present case are the same as presented in the earlier case; whether the controlling facts or legal principles have changed substantially since the earlier case; and, whether there are special circumstances that would warrant the conclusion that enforcement of the judgment would be unfair.

*Id.* at Syl. Pt. 6, 301 S.E.2d at 218.

▮▮▮▮ In Syl. Pt. 1, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), this Court defined the criteria for the application of collateral estoppel:

> Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

In *Holloman v. Nationwide Mutual Insurance Company*, 217 W.Va. 269, 276, 617 S.E.2d 816, 823 (2005), this Court pointed out that according to *Miller* the doctrine of collateral estoppel mandates that the facts, the legal standards, and the procedures be identical and that the party against which the

doctrine is asserted has had a full and fair opportunity to litigate the issue. In other words, "[t]he central inquiry on collateral estoppel is whether a given issue has been actually litigated by the parties in the earlier suit." *Peters v. Rivers Edge Mining, Inc.,* 224 W.Va. 160, 177, 680 S.E.2d 791, 808 (2009). *See also Stillwell v. City of Wheeling,* 210 W.Va. 599, 558 S.E.2d 598 (2001); *Mellon–Stuart Co. v. Hall,* 178 W.Va. 291, 359 S.E.2d 124 (1987). Whether those issues could have been litigated is not important; they actually must have been litigated. *Lane v. Williams,* 150 W.Va. 96, 144 S.E.2d 234.

▉ When we apply the *Miller* criteria to the facts of this case, it is evident that collateral estoppel does not bar the instant action. In *Messer II,* our ruling was strictly limited to the issue of apparent authority, not actual authority. In *Messer II,* we explained the following:

> When an attorney-client relationship exists, apparent authority of the attorney to represent his client is presumed. Syl. Pt. 1, *Miranosky v. Parson,* 152 W.Va. 241, 161 S.E.2d 665 (1968). We addressed the significance of this presumption of apparent authority with regard to settlement agreements in *Sanson v. Brandywine Homes, Inc.,* 215 W.Va. 307, 599 S.E.2d 730 (2004). The *Sanson* plaintiffs alleged on appeal that their attorney had reached the settlement with the corporate defendant without their authorization. Although accepting the position of the plaintiffs, the decision to enforce the settlement agreement was upheld based upon the following reasoning:
>
>> While this Court has recognized that "[t]he mere relation of attorney and client does not clothe the attorney with implied authority to compromise a claim of the client," Syllabus Point 5, *Dwight v. Hazlett,* 107 W.Va. 192, 147 S.E. 877 (1929), we have also held that "[w]hen an attorney appears in court representing clients there is a strong presumption of his authority to represent such clients, and the burden is upon the party denying the authority to clearly show the want of authority." Syllabus Point 1,

*Miranosky v. Parson,* 152 W.Va. 241, 161 S.E.2d 665 (1968).

222 W.Va. at 418–19, 664 S.E.2d at 759–60. This Court did not expressly determine that Mr. Dellinger had the actual authority to settle the case on behalf of his clients. Rather, we simply ruled that Mr. Dellinger's clients had failed to overcome the apparent authority that is implicit in an attorney-client relationship. Thus, the first criterion of collateral estoppel, that "the issue previously decided is identical to the one in the current proceeding" has not been satisfied.

▉ We observe that the issue of whether Mr. Dellinger had actual authority to bind his clients to the settlement with Ms. Messer is hotly disputed. That issue is therefore appropriate for a jury's consideration. This Court has recognized that

> "[w]hen the evidence is conflicting, the questions of whether the relationship of principal and agent existed and, if so, *whether the agent acted within the scope of his authority are questions for the jury.*" Syl. Pt. 2, *Laslo v. Griffith,* 143 W.Va. 469, 102 S.E.2d 894 (1958). The trial court's finding as to the existence of an agency relationship, unless supported by insufficient evidence, should not be disturbed. *Flynn v. Yeager,* 89 W.Va. 520, 109 S.E. 604 (1921).

*Thompson v. Stuckey,* 171 W.Va. 483, 487, 300 S.E.2d 295, 299 (1983)(emphasis added). *See also* Syllabus 1, in part, *Nees v. Julian Goldman Stores, Inc.,* 109 W.Va. 329, 154 S.E. 769 (1930)(scope of agent's authority is question for jury under proper instructions, where evidence and circumstances are sharply conflicting).

For the foregoing reasons, we reverse the ruling of the circuit court granting Appellees' motion to dismiss, and remand this matter back to the circuit court so that a jury trial may be conducted on the issue of whether Mr. Dellinger had actual authority to settle the claims against his clients, and for such further action deemed necessary.

## IV.

## CONCLUSION

Accordingly, we reverse the November 19, 2009, order of the Circuit Court of Cabell

County, West Virginia, and remand this matter to the circuit court for further action consistent with this opinion.

**Reversed and Remanded.**